UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

SHANISE N. WILLIAMS,

        Plaintiff,

v.

ANDREW M. SAUL,
Commissioner of the Social Security
Administration,

        Defendant.

CAUSE NO. 2:19-CV-445 DRL

OPINION & ORDER

Shanise N. Williams appeals from the Social Security Commissioner's final judgment denying her disability insurance. Ms. Williams requests remand of her claim for further consideration. Having reviewed the underlying record and the parties' arguments, the court grants Ms. Williams' request for remand (ECF 1) and remands the Commissioner's decision.

BACKGROUND

Ms. Williams suffers from a variety of mental health impairments. Ms. Williams has graduated high school, obtained a post-secondary certification in medical administrative assistance, and has past work as a cashier and a day care worker, but has no past relevant work [R. 23, 25, 89-90]. Ms. Williams' mental impairments include affective disorder, anxiety disorder, and borderline intellect [R. 18]. Ms. Williams also suffers from the physical impairments of respiratory complications, which the ALJ found to be non-severe, and an alleged sun allergy and injury to her shoulder, which the ALJ found to be non-medically determinable [R. 18-19]. The ALJ did not decide the severity of Ms. Williams' hip dysplasia.

Ms. Williams filed Title II and Title XVI applications for benefits on August 29, 2016, which were denied initially on November 28, 2016, and again upon reconsideration on April 4, 2017 [R 15].

Her claims were heard by an Administrative Law Judge (ALJ) in two hearings on August 20, 2018, and February 11, 2019 [*Id.*]. In a March 18, 2019 decision, the ALJ denied Ms. Williams' petition on the basis that she could not show that she was disabled as defined by the Social Security Act [R. 26].

The ALJ found that Ms. Williams had the residual functional capacity (RFC) to perform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant could tolerate only occasional exposure to pulmonary irritants such as fumes, odors, dusts, gases, and areas of poor ventilation. The claimant could perform simple tasks, and make simple work-related decisions; lastly, she can deal with occasional changes in work processes and work environment. [R. 21]. Though the ALJ found that Ms. Williams had no past relevant work, the ALJ found that she could perform a significant number of jobs in the national economy [R. 25]. This decision became final when the Appeals Council denied Ms. Stewart's request for review [R. 1].

## STANDARD

The court has authority to review the Council's decision under 42 U.S.C. § 405(g); however, review is bound by a strict standard. Because the Council denied review, the court evaluates the ALJ's decision as the Commissioner's final word. *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). The ALJ's findings, if supported by substantial evidence, are conclusive and nonreviewable. *See Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is that evidence which "a reasonable mind might accept as adequate to support a conclusions," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and may well be less than a preponderance of the evidence, *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citing *Richardson*, 402 U.S. at 401). If the ALJ has relied on reasonable evidence and built an "accurate and logical bridge from the evidence to conclusion," the decision must stand. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). Even if "reasonable minds could differ" concerning the ALJ's decision, the court must affirm if the decision has adequate support. *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

DISCUSSION

When considering a claimant's eligibility for disability benefits, an ALJ must apply the standard five-step analysis: (1) is the claimant currently employed; (2) is the claimant's impairment or combination of impairments severe; (3) do her impairments meet or exceed any of the specific impairments listed that the Secretary acknowledges to be so severe as to be conclusively disabling; (4) if the impairment has not been listed as conclusively disabling, given the claimant's residual function capacity, is the claimant unable to perform her former occupation; (5) is the claimant unable to perform any other work in the national economy given her age, education, and work experience. 20 C.F.R. § 404.1520; *Young v. Secretary of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). The claimant bears the burden of proof until step five, where the burden shifts to the Commissioner to prove that the claimant can perform other work in the economy. *See Young*, 957 F.2d at 389.

Ms. Williams appears to challenge the ALJ's conclusion that she is not totally disabled. She makes two arguments of error. Ultimately, Ms. Williams asserts that (1) evidence submitted after the hearing required an updated medical review; and (2) the ALJ failed to properly accommodate Ms. Williams' moderate limitations in concentrating, persisting, and maintaining pace.

Ms. Williams was diagnosed with hip dysplasia in July 2018 for which she underwent surgery in November 2018. She asserts that the ALJ impermissibly ignored her hip dysplasia and failed to account for her ongoing pain and struggles with hip dysplasia in creating the RFC. She further argues that the ALJ erred in making determinations regarding her hip dysplasia when the state agency physicians did not have access to that information. Plaintiff began reporting pain in her right hip starting in March 2018 [R. 81, 1185]. X-rays showed bilateral hip dysplasia, and her right hip was "globally inflamed" and difficult for her to move [R. 1180]. Before her surgery, she required a cane to assist with ambulation [R. 1185]. In October 2018, Ms. Williams displayed an antalgic gait, reduced range of motion in her right hip, and positive Faddir and Stinchfield tests [R. 1123]. Ms. Williams

3

underwent surgery on November 27, 2018 [R. 1216-17]. After surgery, Ms. Williams required hospitalization for sinusitis, acute post-operative blood loss anemia, and hip pain on December 7, 2018, after which she required twenty-four hour rehabilitation nursing care in order to "optimize medical stability with special attention to cardiac, pulmonary, gastrointestinal, genitourinary and integument systems" [R. 1185-87]. Her doctor noted that she required "inpatient management and an interdisciplinary team approach to the delivery of rehabilitation care," and that she needed therapy at least there hours a day to achieve discharge goals [R. 1187]. Ms. Williams required a walker upon discharge on December 19, 2018, and her gait was still listed as abnormal [R. 1188]. She reported at the hearing that she had not been "released from the doctor" or given any indication as to when she should stop using the walker [R. 82].

The ALJ provided little discussion of Ms. Williams' hip dysplasia. The ALJ found that records of her hip dysplasia showed that it was asymptomatic with no need for intervention until late November 2018 [R. 24]. The ALJ further noted that post-operative records reflected no complications or misalignment, that Ms. Williams was weight bearing, and that the record "failed to confirm that the condition would meet the required durational period" [R. 24]. The ALJ attempts to justify this finding by noting that, even if Ms. Williams were limited to sedentary work, the vocational expert found that there would remain a significant number of jobs in the national economy, and therefore the outcome of the decision would remain the same [R. 24]. Finally, the ALJ found that there was no evidence that Ms. William's required an ambulatory aid, and that the record only reflected "some antalgia" but remained stable. [R. 24].

There are a number of problems with the ALJ's reasoning. First, the ALJ does not provide a single citation to the record, making it difficult for the court to verify the information provided in the decision, particularly when other evidence within the record conflicts with the ALJ's account. For instance, the ALJ insists that Ms. Williams' hip dysplasia remained asymptomatic with no need for

4

intervention until late November 2018 without providing any citations to evidence in the record. However, the medical record documents that Ms. Williams began reporting pain in March 2018, meaning that as of March 2018 Ms. Williams was symptomatic [R. 81, 1185]. At the hearing in February 2019, Ms. Williams was still reporting pain and the need for a walker as given to her in rehab in December 2018 [R. 81, 1188]. This evidence shows that Ms. Williams was still suffering from symptoms eleven months after her first report of symptoms. This contradicts the ALJ's statement that the record fails to confirm that the condition would meet the required durational period. There is evidence that the symptoms from Ms. Williams' right hip dysplasia lasted at least eleven months and were continuing, as she continued to rely on a walker during month eleven. The ALJ did not rely on any medical evidence or doctor's opinion in finding that her hip dysplasia did not meet the durational requirement, which requires that an impairment has lasted or is expected to least for a continuous period of at least 12 months. 20 C.F.R. § 404.1509. Moreover, the only note that references Ms. Williams being asymptomatic was with regard to her left hip. A doctor in August 2018 noted bilateral hip dysplasia in x-rays but found her left hip to be asymptomatic [R. 1180]. The same doctor's note showed that her right hip was "globally inflamed. It is hard for her to move it at all. It is exacerbated with all motions of pain, but it is difficult for her to abduct and flex or adduct her hip" [R. 1180]. In short, the ALJ mischaracterized Ms. Williams' hip pain as asymptomatic before her surgery in November 2018.

      Next, the ALJ erred in finding that the record provided no evidence that Ms. Williams required an ambulatory aid. "A cane does not require a prescription," and the suggestion of the use of an ambulatory aid by a professional verifies a claimant's reliance on one. *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010). However, medical necessity requires more than evidence of use of an ambulatory aid or a claimant's subjective belief that she needs one to effectively ambulate. *See Tripp v. Astrue*, 489 F. Appx. 951, 955 (7th Cir. 2012). Here, Ms. Williams testified that the walker had been given to her

while in rehab, because she needed more support to get around than the cane alone provided her [R. 81-82]. This is corroborated by the intake and discharge notes from rehab. Her intake notes state that she used a cane for assistance with ambulation, but by discharge she had developed musculoskeletal chest pain due to weight bearing with the walker [R. 1188]. The ALJ failed to acknowledge or account for Ms. Williams' need for a walker as provided to her while in inpatient rehab.

The ALJ also failed to properly ground the decision that Ms. Williams' hip dysplasia was asymptomatic with no need for intervention and failed to meet the durational requirement with a medical opinion. The state agency physicians provided their opinions in November 2016 and April 2017. However, Ms. Williams did not even begin to complain of hip dysplasia symptoms until March 2018. The ALJ could not determine how Ms. Williams' hip dysplasia affected her RFC or how long her hip dysplasia was expected to cause symptoms without obtaining an updated medical review of the evidence by a state-agency doctor. This circuit has regularly found that the ALJ cannot make determinations regarding the significance of medical findings on his or her own. *See Moreno v. Berryhill*, 882 F.3d 772, 729 (7th Cir. 2018) (remanding where the ALJ relied on his own assessment of mental-health treatment notes); *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (remanding where the ALJ found that a physician's report and MRIs were similar to existing evidence); *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (remanding where the ALJ failed to submit an MRI to medical scrutiny and summarized the MRI on her own). The error here, as in *Moreno*, is that the ALJ made her own assessment of the treatment records to determine that the impairment would not last the duration and that she was asymptomatic prior to surgery. The ALJ improperly decided that the medical evidence did not support the durational requirement. This requires remand. Without any medical input, the ALJ could not reliably make the determination that Ms. Williams' hip dysplasia was not expected to last twelve months.

The ALJ was also incorrect in attempting to justify her argument by noting that the vocational expert found sedentary jobs that Ms. Williams could perform. It is possible that Ms. Williams would have further exertional limitations, and it is also possible that her reliance on an ambulatory aid would change the RFC. Any change in the RFC may alter the vocational expert's testimony. Therefore, remand is required for proper consideration of Ms. Williams' hip dysplasia.

Ms. Williams makes further arguments regarding the ALJ's treatment of her moderate limitations in concentrating, persisting, and maintaining pace. However, because the ALJ erred in evaluating her hip dysplasia, the court need not address these other arguments. Proper analysis of the Ms. Williams' hip impairments may alter the rest of the decision. On remand, the ALJ should properly analyze Ms. Williams' hip dysplasia and obtain an updated medical opinion regarding the hip dysplasia.

Ms. Williams also requests that the court reverse the ALJ's decision and award benefits. This circuit has said that the reversal with payment of benefits is for the unusual case where all factual issues have been resolved and the record requires a finding of disability. *See Kaminski v. Berryhill*, 894 F.3d 870, 875 (7th Cir. 2018) (finding the payment of benefits necessary after giving the treating physician's opinion controlling weight). However, the factual issues here have not been resolved. The ALJ did not properly consider the evidence in the record or obtain an updated medical opinion. However, it is the role of the ALJ, not the court, to weigh all this evidence. *See Powers v. Apfel*, 207 F.3d 431, 434-35 (7th Cir. 2000); *see also Underwood v. Astrue*, 430 F. Appx. 532, 535 (7th Cir. 2011) ("the ALJ is the factfinder in a disability proceeding – it is for him to weigh evidence and determine credibility"). Therefore, remand is the appropriate action in this case.

## CONCLUSION

The court finds that the ALJ erred in failing to properly analyze Ms. Williams' hip dysplasia and in failing to obtain an updated medical opinion. The court therefore GRANTS Ms. Stewart's request for remand and REMANDS the Commissioner's decision.

SO ORDERED.

September 4, 2020 _s/ Damon R. Leichty_
Judge, United States District Court